IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | CRIMINAL NO. DLB-24-146 |
| | * | |
| JULIAN JOEL LEE EVERETT, | * | |
| | * | |
| Defendant | * | |
| | * | |
| ****** | | |

### GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

The Government hereby submits this Memorandum in Aid of Sentencing the Defendant, Mr. Julian Everett, scheduled for Monday, October 21, 2024 at 10:00 a.m. Mr. Everett pleaded guilty to an Information charging Kidnapping of a Minor, in violation of 18 U.S.C. § 1201(a)(1) (Count One) and Production of Child Pornography, in violation of 18 U.S.C. § 2251(a) (Count Two). (ECF nos. 1, 9.) The Government respectfully submits that a 299-month term of imprisonment on each count running concurrently, to be followed by a 20-year term of supervised release, is sufficient but not greater than necessary to comply with the purposes of sentencing under 18 U.S.C. § 3553(a)(2).

### FACTUAL BACKGROUND

*Facts Regarding the Instant Offense, as Agreed to in the Plea Agreement's Statement of Facts:*

At all times relevant to the conduct described below, **JULIAN JOEL LEE EVERETT ("EVERETT")** was a resident of New Carrollton, Prince George's County, Maryland, and resided at a residence on Westbrook Drive, in New Carrollton, Prince George's County (**"EVERETT**'s Residence").

**Victim 1**

On or about August 21, 2016, **EVERETT** transported Victim 1 (who was then 17 years and 8 months old) from Victim 1's residence in Washington, D.C. to **EVERETT**'s place of employment which was as a barbershop named Signature Cuts and Shaves, located at 1019 U

Street, NW, Washington, D.C. ("Barbershop") in a blue Honda sedan. That Honda sedan, registered to **EVERETT**'s mother ("the Honda sedan"), was manufactured outside the State of Maryland and, therefore, meets the statutory definition of "instrumentality of interstate commerce" as that term is used in Title 18, United States Code, Section 1201(a)(1). **EVERETT** was not the parent, grandparent, brother, or uncle of Victim 1, nor did **EVERETT** ever have legal custody of Victim 1.

Once at the Barbershop, **EVERETT** created and provided Victim 1 with a beverage for Victim 1 to drink. Victim 1 drank some of the beverage, then began to feel sick, becoming so impaired as to no longer be capable of consenting.

When Victim 1 woke up, **EVERETT** was driving Victim 1 to **EVERETT**'s Residence. Victim 1 stated that she passed out again while in the Honda sedan and woke up to find herself naked on a cold floor, in a location unfamiliar to Victim 1.

Victim 1 woke to find **EVERETT** carrying her to a bed. Victim 1 observed the flash of lights and observed that **EVERETT** was naked. Victim 1 lost consciousness and woke up to seeing **EVERETT**, still naked, moving his naked body on top of the victim's naked body in a motion the victim described as having sex. Victim 1 tried to physically push away **EVERETT** but was unable to do so. Victim 1 woke later and found herself sitting in a shower, being bathed by **EVERETT**.

**EVERETT** then put the victim in the Honda sedan and drove Victim 1 from his residence to her residence in Washington, D.C. While **EVERETT** was driving the car, Victim 1 took **EVERETT**'s phone because she thought **EVERETT** recorded the sexual acts he engaged in with her. Victim 1 observed digital images on **EVERETT**'s cellular phone that she recognized to be naked images of herself. Victim 1 did not consent to the taking of these sexually explicit images, nor did Victim 1 consent to any sexual contact with **EVERETT**. **EVERETT**'s cellular phone was produced outside the state of Maryland and thus had been mailed, shipped or transported in and affecting interstate or foreign commerce.

**Victim 2**

On or about July 11, 2005 (when Victim 2 was 16 years old), **EVERETT** transported Victim 2 from the Commonwealth of Virginia in a red, two-door Ford Mustang to **EVERETT**'s Residence. **EVERETT** told Victim 2 that she and **EVERETT** were going to stay in the local Virginia area to get food. While **EVERETT** was driving Victim 2, **EVERETT** informed her he needed to go by his residence quickly to pick something up for a friend. **EVERETT** then drove Victim 2 to **EVERETT**'s Residence.

While at **EVERETT**'s Residence, **EVERETT** provided Victim 2 with a beverage, and engaged in sexual intercourse with Victim 2, without Victim 2's consent. **EVERETT** also took nude photographs of Victim 2 with an unknown electronic device, without her consent. **EVERETT** then transported her from his residence in Maryland into the Commonwealth of Virginia. During this trip, Victim 2 attempted to use her cellular phone to call 911. **EVERETT** snatched the phone from Victim 2. While struggling for the phone, **EVERETT** broke Victim 2's phone. Victim 2 tried to open her door to exit the vehicle, and **EVERETT** tried to take Victim

2

2's purse.  When Victim 2 screamed, **EVERETT** punched Victim 2 in the mouth, breaking one of her teeth, resulting in surgery to repair the tooth.  Victim 2 then flagged down an oncoming vehicle and had someone in that vehicle call 911.  Law enforcement responded to the area and questioned **EVERETT**, who stated that he did punch Victim 2 and that he was sorry.  Victim 2 obtained a forensic exam on July 11, 2005.  DNA was collected from the sexual assault kit.

**Victim 3**

On or about August 23, 2015 (when Victim 3 was approximately 18 years and 3 months old), **EVERETT** transported Victim 3 from a night club in Washington, D.C. to a gas station (also in Washington D.C.), where he created and provided Victim 3 with a beverage.

**EVERETT** then transported Victim 3 to **EVERETT**'s Residence by car.  Victim 3 was unable to walk on her own, and **EVERETT** had to assist her out of the car into **EVERETT**'s Residence.  **EVERETT** removed Victim 3's clothing and engaged in sexual intercourse and oral sex with Victim 3, without Victim 3's consent.

The next morning, Victim 3 woke up to find **EVERETT** dressing Victim 3. **EVERETT** drove Victim 3 back to Washington, D.C.  Later that same day, Victim 3 went to a hospital, where Victim 3 reported the assault and received a forensic exam.  DNA was collected from the sexual assault kit.

On or about November 5, 2018, the Prince George's County Police Department's DNA Lab provided a Combined DNA Index System ("CODIS") Match Notification Report to the Prince George's County Police Department's Sexual Assault Unit.  The CODIS match provided a "hit" between the DNA collected in Victim 3's sexual assault kit, to DNA collected by the Commonwealth of Virginia involving Victim 2.  The DNA "hit" stated that the male DNA collected in Victim 3's sexual assault kit was a match to **EVERETT**.

**Victim 4**

On March 26, 2019, Victim 4 reported to the Prince George's County Police Department's Criminal Investigation Division a sexual assault that occurred between March and April of 2015 by a person known to Victim 4 as "Julian."  Victim 4, who was approximately 16 years and 10 months old at the time of the reported incident, met **EVERETT** a few days prior when **EVERETT** rode his yellow motorcycle up to her and introduced himself to her in a public area in Washington, D.C.  **EVERETT** promised Victim 4 a motorcycle ride, and they exchanged phone numbers.

On the date of the incident, **EVERETT** transported Victim 4 from her residence in Washington, D.C. and drove her back to **EVERETT**'s Residence on a yellow Buell motorcycle.  A search of the Maryland Vehicle Administration information for **EVERETT** revealed he was the registered owner of a 2010 Buell Series XB12R Firebolt motorcycle with license plate MD D79146, which was titled to **EVERETT** in July 2011, at **EVERETT**'s Residence.

Victim 4 stated she was unaware where she were being transported, and was surprised to realize that she was in the State of Maryland. Victim 4 was under the impression that she and **EVERETT** were just going to drive around the immediate area in Washington, D.C.

Once at his residence, **EVERETT** offered to mix a drink for Victim 4. After ingesting some of the beverage, Victim 4 stated that she began to lose focus, felt light headed and weak. **EVERETT** escorted Victim 4 to a bedroom, laid Victim 4 her down on the bed and then **EVERETT** took his clothes off. **EVERETT** then removed Victim 4's clothing and proceeded to engage in multiple sexual acts with Victim 4, which Victim 4 reported was without her consent, including sexual intercourse, and anal intercourse, and **EVERETT** forced his penis into contact with Victim 4's mouth. Victim 4 further reported that she was impaired such that she was incapable of giving consent immediately after she began to lose focus and that condition continued throughout the incident.

**EVERETT** digitally recorded the sexual assault. Victim 4 recalled seeing a light, similar to a camera phone light, over **EVERETT**, during the assault. **EVERETT** then drove Victim 4 back to her residence. Victim 4 confronted **EVERETT** about producing sexual images of Victim 4 on the drive back to Victim 4's residence, to which **EVERETT** stated, in sum and substance, that he *recorded* their encounter. Victim 4 asked **EVERETT** to delete the nude photos of her. **EVERETT** stated he would, but not right away because he enjoyed viewing the material.

**EVERETT'S Arrest and Search of EVERETT's Residence**

On March 20, 2019, an arrest warrant was issued for **EVERETT** on three counts of Second Degree Rape, three counts of Third Degree Sex Offense, three counts of Fourth Degree Sex Offense and three counts of Second Degree Assault. On or about March 21, 2019, **EVERETT** was arrested, and is currently being held without bond in Prince George's County.

On March 21, 2019, Prince George's County Police executed a search warrant at **EVERETT**'s Residence. Upon entry, law enforcement observed **EVERETT** in a bedroom, sitting on a bed, wearing sweatpants and a shirt. Law enforcement found the following electronic devices within that bedroom: (a) a black and silver in color Apple iPhone; (b) a silver in color Apple MacBook Pro laptop with serial number C02W6JHLHTD5, which had been manufactured outside the State of Maryland; (c) a black and silver in color Lenovo laptop with serial number CB18867060; and (d) a black, silver, and white in color Apple iPhone with unknown serial number in a Green Bay Packers phone case (collectively, the "Devices").

Federal law enforcement obtained a search warrant for **EVERETT**'s electronic devices. The search of the Devices revealed that each of the Devices contained images of child sexual abuse material, including the following:

(a) five images of Victim 1 laying on a bed with her top pulled down, exposing her breast and naked from her waist down, with an African American male's hand grabbing her buttocks in one of the images;
(b) two videos that depict an African American male engaging in a sexual act with Victim 1, specifically having sexual intercourse with Victim 1;

    (c) two images of Victim 4 engaged in a sexual act with **EVERETT**, specifically sexual intercourse; and

    (d) ten images of Victim 4 with her genitalia exposed, and four videos of Victim 4 engaged in a sexual act, that is, sexual intercourse, with **EVERETT**.

The Devices also contained text messages between **EVERETT** and the victims or screenshots between **EVERETT** and the victims.

**Other Relevant Conduct**

During the forensic examination of **EVERETT**'s electronic devices, law enforcement discovered images and a video of an unidentified female (Victim 5), including a video showing **EVERETT** engaging in sexual intercourse with Victim 5. In the video, Victim 5 can be heard mumbling, and is physically unresponsive, with her eyes closed.

A forensic examination of the digital media items seized from **EVERETT**'s Residence yielded a total of approximately 7 images and 6 videos of child pornography produced by **EVERETT**, inclusive of those images and videos previously described in this Statement of Facts.

# ARGUMENT

**I.**     **The Applicable Guidelines Range is 324 Months to 405 Months' imprisonment.**

*Total Offense Level and Criminal History Category:* The Government agrees with Probation that the Defendant has a total offense level of **40**. (ECF No. 16 ¶ 115.) The Government agrees with Probation that the Defendant's criminal history category is **II**. (*Id.*)

*Guidelines Range:* Given the above calculations, the Government agrees with Probation that the Defendant's guidelines range is 324 months' imprisonment to 405 months' imprisonment. (*Id.*)

**II.**     **Relevant Sentencing Considerations under 18 U.S.C. § 3553(a)**

A sentencing court must follow the three-step process set forth by *Gall v. United States*. *See* 522 U.S. 38 (2007). First, the court must properly determine the Guideline range. *See id.* at 49 (citing *Rita v. United States*, 551 U.S. 338, 347-48 (2007)). Second, the court must determine whether to apply any of the guidelines' departure policy statements to adjust the Guideline range. *See id.* at 49-50. Third, the court must consider all the factors set forth in 18 U.S.C. § 3553(a) as

a whole, including whether a variance—a sentence outside the advisory guideline system—is warranted. *See id*.

The stipulation of facts adequately sets forth the nature and circumstances of the offenses. The Defendant's criminal history includes a prior conviction for a felonious assault committed against one of the minor victims in the instant offense, in an effort to prevent her from contacting law enforcement. (ECF No. 16 ¶ 87.) It also includes a simple assault committed when the Defendant was a minor, and a conviction for Sexual Solicitation in 2007 in the District of Columbia for soliciting an undercover officer. (*Id*. at ¶¶ 86, 88.) Pursuant to the plea agreement, the Defendant is scheduled to be sentenced on January 22, 2025 in the Circuit Court for Prince George's County, Maryland for contact offenses related to the conduct referenced in the stipulation of facts.

The sentencing factors under 18 U.S.C. § 3553(a) support the Government's recommendation of a 299-month term of imprisonment. The Defendant's conduct is the stuff of public safety nightmares. Mr. Everett appeared to some of the victims to be the owner of an upscale, successful barbershop on U St., NW Washington, DC. The victims in this case, all minors or just past 18 years old, each allege that Mr. Everett charmed them, then drugged them, by serving them a beverage that rendered them effectively incapacitated. Mr. Everett then took them to his home in Prince George's County and sexually assaulted them. That trauma was compounded by the realization that Mr. Everett had recorded the sexual assaults, repeatedly committing the additional offense of production of child pornography. These acts were committed against multiple minor victims and spanned 2005 to 2019, according to the evidence that law enforcement was able to recover.

The sentencing guidelines recommend up to 405 months' imprisonment. A sentence of

6

299 months along with 20 years of supervised release will ensure that the victims do not have to worry about whether the Defendant will pose a threat to another minor. Such a sentence would also inform the community that coming forward and reporting sexual assault, to seek accountability while also potentially stopping the future sexual assault of others, is worth it—and will accomplish those worthy objectives. The recommended sentence would reflect the seriousness of the offenses, promote respect for the law, and provide just punishment for the offenses. A significant sentence in this matter would also afford adequate deterrence to criminal conduct, hopefully causing those who would consider drugging and assaulting a vulnerable victim to believe that the risk of getting caught is not worth it. The sentence would ensure that the public is protected from further crimes by Mr. Everett, as this is a crime that could be committed by young and old alike, and effective prevention of this type of crime is perhaps best achieved by deterrence and conscience, and sadly by the erosion of any baseline sense of trust in friendly people we meet.

### III.        The Matter in the Circuit Court for Prince George's County

The below-guidelines sentencing range requested pursuant to Rule 11(c)(1)(C), along with the Government's downward-variant sentencing recommendation, account for the fact that Mr. Everett has been detained on related conduct in Prince George's County since March 25, 2019. The Bureau of Prisons, in light of the nature of the resolution of this matter and the related resolution of the matter in Prince George's County, will not credit Mr. Everett's time in Prince George's County custody against his federal sentence—and for that reason, recognizing the overlapping facts of the state and federal cases, the Government has agreed to the downward-variant Rule 11(c)(1)(C) range. Were the Court to sentence Mr. Everett to the term of imprisonment recommended by the Government, the federal term of imprisonment, plus the time credited only to the Prince George's County case and *not* the federal sentence, would cumulatively

add up to a term of imprisonment within the applicable Guidelines.

**IV.     Victim Impact Statements and Restitution**

Victim 1 has submitted the attached victim impact statement and documentation associated with her request for restitution (see Attachment A (VIS)); also see Attachment B, filed under seal). As noted in the PSR at ¶ 127, should the Court find that an amount that reflects Mr. Everett's relative role in the causal process that underlies the victim's losses is less than $3,000, then $3,000 would be the appropriate amount of restitution. 18 U.S.C. § 2259; U.S.S.G. § 5E1.1. After receiving notification of the hearing and her rights as a victim, including restitution, on September 27, 2024, Victim 2 expressed an interest in being present at sentencing and in providing a victim impact statement. No victim impact statement has been received at the time of this filing. Should Victim 2 provide a written impact statement to the United States' Attorney's Office prior to sentencing, it will be provided under seal to the Court promptly. Notification of the sentencing and her rights have previously been mailed and emailed to Victim 3. Additional efforts to contact Victim 3 by telephone have been unsuccessful, and to date, no response from Victim 3 has been received. After receiving notification of the hearing and her rights as a victim, including restitution, Victim 4 has informed the Victim Assistance Specialist with the United States' Attorney's Office that she is unable to attend the sentencing hearing due to her employment commitments, but that she intends to submit a victim impact statement. No victim impact statement has been received at the time of this filing. Should Victim 4 provide a written impact statement to the United States' Attorney's Office prior to sentencing, it will be provided under seal to the Court promptly. Victim 5, as noted in the Statement of Facts contained herein, has never been identified by law

enforcement.

## **CONCLUSION**

For the reasons stated, as well as those presented at the sentencing hearing, the Government submits that the appropriate sentence in this matter is a 299-month term of imprisonment to run concurrently on count one and count two, along with no fine, forfeiture of the items set forth in the proposed order of forfeiture, and compliance with the Sexual Offender Registration and Notification Act (42 U.S.C. § 16901, *et seq.*).

          Respectfully Submitted,

          EREK L. BARRON
          United States Attorney

By:      /s/ Timothy F. Hagan, Jr.
          Timothy F. Hagan, Jr.
          Assistant United States Attorney

**CERTIFICATE OF SERVICE**

This is to certify that on this day, **October 7, 2024**, a copy of the foregoing Government's Sentencing Memorandum was electronically filed and delivered via ECF and email to all counsel of record in this matter.

 /s/ Timothy F. Hagan, Jr.
Timothy F. Hagan, Jr.
Assistant United States Attorney